OPINION
{¶ 1} Defendant-appellant Larry Bell appeals his conviction and sentence from the Fairfield County Court of Common Pleas on one count each of attempt to commit burglary, attempt to commit theft of drugs and possession of criminal tools. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On January 21, 2005, the Fairfield County Grand Jury indicted appellant on one count of attempt to commit burglary in violation of R.C. 2911.12(A)(2) and 2923.02, a felony of the third degree, one count of attempt to commit theft of drugs in violation of R.C. 2913.02(A)(1),2913.02(B)(6) and 2923.02, a felony of the fifth degree, and one count of possession of criminal tools in violation of R.C. 2923.24, a felony of the fifth degree.
 {¶ 3} Subsequently, on May 17, 2005, appellee filed a Motion to Amend the Indictment pursuant to Crim. R. 7(D). Appellee specifically requested that the indictment be amended to reflect that the correct burglary section of the Revised Code was R.C. 2911.12(A)(1) rather than 2911.12(A)(2). Appellee indicated that the incorrect subsection of R.C.2911.12 was cited in the indictment. As memorialized in an Entry filed on May 23, 2005, the trial court granted appellee's motion.
 {¶ 4} Thereafter, a jury trial commenced on May 24, 2005. The following testimony was adduced at trial.
 {¶ 5} On November 20, 2004, appellant, an inmate at the Southeastern Correctional Institution, and Joseph Hicks, another inmate, were assigned by Corrections Officer David Hicks[1] to clean a small room in the infirmary known as the optometrist's room. The room was kept locked between shifts. While the two men were cleaning, Correction Officer Hicks left the area to go to another area in the infirmary. Officer Hicks was away from the area approximately two minutes when a nurse came to him and told him that she "could hear something odd going on in that room . . ." Transcript at 131-132. When he arrived on the scene, Officer Hicks heard a noise coming from the optometrist's room that sounded like ceiling tiles being lifted and moved. Appellant, who was standing on a desk in the optometrist's room and did not have anything in his hands to clean with, told Officer Hicks that he had been cleaning cobwebs out of a vent in the ceiling. At the time, Joseph Hicks was standing in the doorway. After looking around and finding nothing amiss, Officer Hicks had appellant and Joseph Hicks leave the room before locking up the same. He did not file any type of incident report after speaking with his superior officer.
 {¶ 6} At trial, Corrections Officer Phillip Mickle testified that he was assigned to the infirmary and that a hallway goes from the infirmary into the optometrist's office, which is normally kept locked. Testimony was adduced at trial that the pharmacy is a separately secured portion of the infirmary that only the pharmacist has keys to, and that a drug safe is located in the pharmacy. Officer Mickle testified that only the pharmacist and his or her assistant are permitted in the pharmacy area.
 {¶ 7} Officer Mickle testified that, after hearing about the incident that occurred on November 20, 2004, he began a search of the optometrist's room the next day looking for evidence since he "wanted to find out what really did transpire." Transcript at 168. During his search, Officer Mickle found a piece of metal that he discovered had been broken off of the optometrist's chair. The officer further found a small hole that had been broken into a concrete block wall that separated the optometrist's room from the infirmary drug safe. Officer Mickle testified that, to find such hole, he had to move a number of items, including an aquarium, two large trash cans, and several blackboards, one which he described as being "very heavy." Transcript at 183. The officer further testified that he found concrete chips in a shop vac in the optometrist's room and that the ceiling tiles in the room by the ceiling vent were raised.
 {¶ 8} On cross-examination, Officer Mickle testified that it took him between an hour and a half and two hours to move all of the items that were in front of the hole in the wall.
 {¶ 9} Testimony was adduced at trial that Trooper Archie Spradlin of the Ohio State Highway Patrol was called by an investigator at Southeastern Correctional Institution to conduct an investigation. During his investigation, Trooper Spradlin spoke with inmate Joseph Hicks, who gave a written statement on November 24, 2004. Hicks, in his written statement, which was admitted at trial as State's Exhibit 11, stated that appellant had been planning to break into the pharmacy for two weeks in order to get pills. Hicks further indicated in his written statement that he had been labeled as an informant and a snitch and that appellant offered to help him if Hicks agreed to serve as a look-out. When Hicks was asked during his interview by Trooper Spradlin what appellant used to bust through the wall, Hicks indicated that appellant used part of a chair. Hicks, in his written statement, further indicated that appellant had been talking about escaping and that he helped appellant since "he's a crazy dude, when a guy talks about shooting and killing c.o.'s, raping nurses and shit, puts me in a bad situation. I just want away from him."
 {¶ 10} At trial, Hicks recanted his story to Trooper Spradlin and testified that appellant was only cleaning on November 20, 2004, and was not trying to break into the pharmacy. Hicks testified that his statement to Trooper Spradlin was a lie and that he gave such statement since he was told that appellant had given a statement against him and also so that he could receive a reduction in his sentence. Hicks further testified on cross-examination that he took neurontin for a mental health disorder. He was, however, unable to state the name of such disorder.
 {¶ 11} At trial, James White, a corrections officer, testified that, on November 24, 2004, he heard appellant talking to another inmate about his plans to break into the pharmacy. At the time, appellant was in a segregated area of the prison. In addition, Corrections Officer Kevin Rupp testified that he was familiar with appellant's voice and that, on November 24, 2004, he heard appellant say "something to the effect of "yeah, I did, but not that night. Two nights earlier. I was cleaning the vents that night.'" Transcript at 290. Officer Rupp assumed that appellant was referring to the alleged break-in in the infirmary.
 {¶ 12} At the conclusion of the evidence and the end of deliberations, the jury, on May 26, 2005, found appellant guilty of all three charges. As memorialized in a Judgment Entry filed on June 6, 2005, appellant was sentenced to three (3) years for attempted burglary, to eight (8) months for attempted theft of drugs, and to eight (8) months for possession of criminal tools. The trial court, in its entry, ordered appellant's sentences to be served concurrently to each other and consecutively to any sentence that appellant was then serving.
 {¶ 13} Appellant now raises the following assignments of error on appeal:
 {¶ 14} "1. THE TRIAL COURT ERRED WHEN IT GRANTED THE STATE'S MOTION TO AMEND THE INDICTMENT.
 {¶ 15} "2. THE TRIAL COURT ERRED BY HAVING APPELLANT STAND TRIAL FOR AN UNSERVED AMENDED INDICTMENT.
 {¶ 16} "3. THE TRIAL COURT ERRED WHEN IT OVERRULED DEFENDANT'S MOTION FOR ACQUITTAL AS TO EACH OF THE THREE COUNTS OF THE INDICTMENT.
 {¶ 17} "4. THE TRIAL COURT ERRED WHEN IT ENTERED A JUDGMENT OF CONVICTION WITHOUT SUFFICIENT EVIDENCE TO ESTABLISH ALL ELEMENTS OF THE OFFENSES CHARGED IN THE INDICTMENT AND THE JUDGMENT OF CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF EVIDENCE.
 {¶ 18} "5. THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT WHEN IT OVERRULED APPELLANT'S MOTION TO COMPEL DISCLOSURE OF EXCULPATORY EVIDENCE.
 {¶ 19} "6. THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT WHEN IT ALLOWED THE INTRODUCTION OF EVIDENCE OF OTHER CRIMES, WRONGS OR ACTS.
 {¶ 20} "7. THE TRIAL COURT ERRED IN IMPOSING MORE THAN THE MINIMUM SENTENCES ALLOWED FOR EACH OFFENSE."
 I {¶ 21} Appellant, in his first assignment of error, argues that the trial court erred when it granted appellee's Motion to Amend the Indictment. We disagree.
 {¶ 22} Crim.R. 7(D) states as follows: "The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged."
 {¶ 23} Although the rule permits most amendments, it flatly prohibits amendments that change the name or identity of the crime charged. SeeState v. O'Brien (1987), 30 Ohio St.3d 122, 126, 508 N.E.2d 144. A trial court commits reversible error when it permits an amendment that changes the name or identity of the offense charged, regardless of whether the defendant suffered prejudice. State v. Smith, Franklin App. No. 03AP-1157, 2004-Ohio-4786, at paragraph 10. See, also, State v.Headley, 6 Ohio St.3d 475, 453 N.E.2d 716. "Whether an amendment changes the name or identity of the crime charged is a matter of law." State v.Cooper (June 25, 1998), Ross App. No. 97CA2326, 1998 WL 340700, at 1, citing State v. Jackson (1992), 78 Ohio App.3d 479, 605 N.E.2d 426.
 {¶ 24} As is stated above, appellant was originally indicted for attempt to commit burglary in violation of R.C. 2911.12(A)(2) and2923.03.[2] R.C. 2911.12(A)(2) states as follows: "(A) No person, by force, stealth, or deception, shall do any of the following:
 {¶ 25} "(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structurethat is a permanent or temporary habitation of any person when anyperson other than an accomplice of the offender is present or likely tobe present, with purpose to commit in the habitation any criminal offense; . . ." (Emphasis added).
 {¶ 26} The trial court, on May 23, 2005, granted appellee's May 17, 2005, Motion to Amend the Indictment and ordered that the first count in the indictment be amended to reflect a violation of R.C. 2911.12 (A)(1). Such section states as follows: "(A) No person, by force, stealth, or deception, shall do any of the following:
 {¶ 27} "(1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense; . . ."
 {¶ 28} "The elements distinguishing R.C. 2911.12(A)(1) burglary from (A)(2) burglary are (1) the type of structure in question and (2) whether a person other than the offender or his accomplice is actually present or is merely `likely to be present.'" State v. Jones, Allen App. No. No. 1-04-53, 2005-Ohio-6859 at paragraph 24, reversed on other grounds.
 {¶ 29} In the case sub judice, since the amendment was a subpart of the original statute, namely, R.C. 2911.12, the name or identity of the crime was not changed and the amendment was proper. See State v.Coleman, Marion App. No. 9-03-23, 2003-Ohio-6440. "Because the amendment herein merely changed the violation from one subpart of the statute to another, the name and identity of the crime remained the same." Id. at paragraph 14.[3] See also State v. McCall (May 10, 1985), Lucas App. No. L-84-321, 1985 WL 7122 in which the court held that the trial court did not err in granting the State's motion to amend the indictment, with respect to a charge of aggravated burglary, "so as to change appellant's mode of entry by stealth or deception, instead of force." The court, inMcCall, held that the amendment did not change the name or identity of the crime, but merely indicated a different mode of entrance.
 {¶ 30} Based on the foregoing, we find that the trial court did not err in granting appellee's Motion to Amend the Indictment since the amendment did not change the name or identity or the crime charged.
 {¶ 31} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 32} Appellant, in his second assignment of error, contends that the trial court erred in having appellant stand trial for an "unserved amended indictment." We disagree.
 {¶ 33} As is stated above, appellee, on May 17, 2005, filed a Motion to Amend the Indictment. Pursuant to an Entry filed on May 23, 2004, the trial court granted appellee's motion.
 {¶ 34} Appellant cites to Middletown v. Blevins (1987),35 Ohio App.3d 65, 519 N.E.2d. 846 for the proposition that an amended indictment must be served on a defendant. In such case, the court held, in relevant part, as follows: "Therefore, we hold that where a defendant is charged with an offense and the government wishes to amend that charge to another offense which is neither the same offense in name oridentity nor a lesser included offense to the original charge, unless the defendant agrees to waive service of another charging instrument, he must be served with a new charging instrument (indictment, information, or complaint) setting forth the nature of the new charge against him." Id. at 67. (Emphasis added)
 {¶ 35} However, as is stated above, in the case sub judice, the amendment to the indictment did not change the name or identity of the offense appellant was charged with. Thus, the trial court did not err in having appellant stand trial without service of the amended indictment.
 {¶ 36} Moreover, in the case sub judice, the trial court filed a journal entry amending the indictment. A copy of both the Motion to Amend the Indictment and that entry granting the same were served on appellant prior to trial. Thus, appellant had notice of the amended indictment.
 {¶ 37} Appellant's second assignment of error is, therefore, overruled.
 III, IV {¶ 38} Appellant, in his third assignment of error, argues that the trial court erred in overruling his Crim.R. 29 Motion for Judgment of Acquittal as to each of the three counts of the indictment. Appellant notes that he made such motion at the close of appellee's case and renewed it when the defense rested. Appellant, in his fourth assignment of error, contends that his convictions for all three charges are against the manifest weight and sufficiency of the evidence.
 {¶ 39} The standard to be used by a trial court in determining a Crim.R. 29 motion is set forth in State v. Bridgeman (1978),55 Ohio St.2d 261, 381 N.E.2d 184, syllabus: "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." An appellate court reviews a denial of a Crim.R. 29 motion for acquittal using the same standard used to review a sufficiency of the evidence claim. See State v. Carter, 72 Ohio St.3d 545, 553,651 N.E.2d 965, 1995-Ohio-104. Thus, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 40} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. . . . The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, 678 N.E.2d 541, citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.
 {¶ 41} As is stated above, appellant was convicted of attempted burglary in violation of R.C. 2911.12(A)(1) and 2923.02. R.C. 2923.02
defines attempt as follows: "(A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." The underlying offense for which appellant was convicted in this case is burglary in violation of R.C.2911.12(A)(1). Such section states as follows: `(A) No person, by force, stealth, or deception, shall do any of the following:'(1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense; . . .'
 {¶ 42} Appellant specifically contends, with respect to his conviction for attempt to commit burglary, that no evidence was adduced at trial that, at the time of the alleged attempted burglary, the drug safe was an "occupied structure" as defined by R.C. 2909.01(C). As is stated above, the drug safe was located in the infirmary.
 {¶ 43} R.C. 2909.01 defines an "occupied structure" as follows: "(C) "Occupied structure" means any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies:
 {¶ 44} "(1) It is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present.
 {¶ 45} "(2) At the time, it is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present.
 {¶ 46} "(3) At the time, it is specially adapted for the overnight accommodation of any person, whether or not any person is actually present.
 {¶ 47} "(4) At the time, any person is present or likely to be present in it."
 {¶ 48} Appellant, in support of his argument, notes that the testimony adduced at trial established that no one was present or likely to be present in the drug safe at the time of the attempted burglary, which occurred on a Saturday, that the drug safe was kept locked, and that the only person with a key to the same was a pharmacist who never worked on Saturdays. According to appellant, the "testimony leads to the conclusion that the drug safe would never be an occupied structure on a Saturday."
 {¶ 49} However, R.C. 2911.12(A) clearly provides that to constitute burglary, the trespass shall occur in either (1) an occupied structureor (2) a separately secured or (3) separately occupied portion thereof. See State v. Ashford (Dec. 11, 1986), Cuyahoga App. No. 51336,1986 WL 14499. From the testimony adduced at trial, it is clear that the drug safe and pharmacy qualified as a separately secured portion of an occupied structure, which was the infirmary, and that persons other than appellant and Joseph Hicks were present in the infirmary at the time of the offense. At trial, Officer Hicks testified that he was in a different portion of the infirmary at the time of the alleged attempt to commit burglary.
 {¶ 50} In the case sub judice, appellant also was convicted of attempt to commit theft of drugs in violation of R.C. 2913.02(A)(1),2913.02(B)(6) and 2923.02. Appellant notes that in order to obtain a conviction for attempted theft of drugs under the above sections, it was necessary for appellee to prove that the object of the attempted theft was a "dangerous drug" as defined by R.C. 4729.01(F). Appellant specifically asserts, with respect to his conviction for attempt to commit theft of drugs, that there was no evidence adduced at trial proving that, at the time of the offense, the drug safe contained any dangerous drugs.
 {¶ 51} R.C. 4729.01 states, in relevant part, as follows: "(F) "Dangerous drug" means any of the following:
 {¶ 52} "(1) Any drug to which either of the following applies:
 {¶ 53} "(a) Under the "Federal Food, Drug, and Cosmetic Act,"52 Stat. 1040 (1938), 21 U.S.C.A. 301, as amended, the drug is required to bear a label containing the legend "Caution: Federal law prohibits dispensing without prescription" or "Caution: Federal law restricts this drug to use by or on the order of a licensed veterinarian" or any similar restrictive statement, or the drug may be dispensed only upon a prescription;
 {¶ 54} "(b) Under Chapter 3715. or 3719. of the Revised Code, the drug may be dispensed only upon a prescription.
 {¶ 55} "(2) Any drug that contains a schedule V controlled substance and that is exempt from Chapter 3719. of the Revised Code or to which that chapter does not apply;
 {¶ 56} "3) Any drug intended for administration by injection into the human body other than through a natural orifice of the human body."
 {¶ 57} At the trial in this matter, Kathy Mathias, a registered nurse at the correctional institution, testified that controlled substances, including narcotics, were kept in the drug safe. She further testified that the drugs kept in the safe normally had to be prescribed by a physician. Testimony also was adduced at trial that the pharmacy was kept locked at all times and that only the pharmacist had a key.
 {¶ 58} Finally, with respect to all three offenses, appellant maintains that appellee failed to establish appellant's identity as "the perpetrator of any of the offenses alleged in the indictment." Appellant notes that he was only left unsupervised in the optometrist's room for two or so minutes and argues, therefore, that he would not have had sufficient enough time to move the numerous items that were found blocking the hole in the wall. Appellant further points out that Officer Mickle testified at trial that it took him between one and a half and two hours to move the items blocking the hole.
 {¶ 59} However, based on the evidence adduced at trial, we find that there was sufficient evidence that appellant was the perpetrator of the offenses. As is stated above, testimony was adduced at trial that appellant was observed standing on a desk in the optometrist's room rear where a hole in the wall was later found. Testimony also was adduced at trial that appellant was overheard by a corrections officer stating that he had tried to break into the infirmary before to steal drugs. Another corrections officer testified at trial that he heard appellant talking about his plans for breaking into the pharmacy. In addition, when an investigation was conducted, a piece of the optometrist's chair was found to be broken off and cement pieces were found in the shop vac. The investigator also found raised ceiling tiles in the room.
 {¶ 60} In short, based upon the evidence as a whole, we find that, construing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of all three crimes proven beyond a reasonable doubt. We further find that the jury did not clearly lose its way so as to create such a manifest miscarriage of justice so that the convictions must be reversed.
 {¶ 61} We find, therefore, the trial court, did not err in overruling appellant's Crim.R. 29 Motion for Judgment of Acquittal as to each of the three counts of the indictment and that appellant's convictions are not against the manifest weight or sufficiency of the evidence.
 {¶ 62} Based on the foregoing, appellant's third and fourth assignments of error are overruled. V
 {¶ 63} Appellant, in his fifth assignment of error, contends that the trial court erred in overruling appellant's motion to compel disclosure of exculpatory evidence. We disagree.
 {¶ 64} Appellant, on March 16, 2005, filed a motion in the trial court seeking, in part, disclosure of "all medications provided to inmate Joseph A. Hicks by the Ohio Department of Rehabilitation and Correction on or about the date of the alleged offense of November 20, 2004" and "[a]ll mental health records for inmate Joseph A. Hicks maintained by the Ohio Department of Rehabilitation and Correction." The trial court, during the trial in this matter, orally overruled such motion on the record. Appellant now argues that since Hicks was the State's only eyewitness, his credibility and competency were at issue.
 {¶ 65} However, Joseph Hicks' mental health records and the list of medications that he was taking are privileged under R.C. 2317.02. Such section states, in relevant part, as follows: "The following persons shall not testify in certain respects: . . .
 {¶ 66} "(B)(1) A physician or a dentist concerning a communication made to the physician or dentist by a patient in that relation or the physician's or dentist's advice to a patient, except as otherwise provided in this division, division (B)(2), and division (B)(3) of this section, and except that, if the patient is deemed by section 2151.421
of the Revised Code to have waived any testimonial privilege under this division, the physician may be compelled to testify on the same subject". . . .
 {¶ 67} "(4) The testimonial privilege described in division (B)(1) of this section is not waived when a communication is made by a physician to a pharmacist or when there is communication between a patient and a pharmacist in furtherance of the physician-patient relation."
 {¶ 68} While there are exceptions to the above rule, appellant does not argue, nor do we find, that any of the exceptions are applicable in the case sub judice. Specifically, we note that there is no evidence in the record that Joseph Hicks waived the physician-patient or pharmacist-patient privilege.
 {¶ 69} Furthermore, we note that Joseph Hicks testified on cross-examination that he had a mental health disorder, although he was unable to recall what disorder he was diagnosed with, and that he was receiving neurontin to treat the same.
 {¶ 70} Appellant's fifth assignment of error is, therefore, overruled.
 VI {¶ 71} Appellant, in his sixth assignment of error, argues that the trial court erred in allowing the introduction of other crimes, wrongs or acts. We disagree.
 {¶ 72} In the case sub judice, written statements that Joseph Hicks made to Trooper Spradlin were read to the jury, over defense counsel's objection, and were later introduced into evidence as State's Exhibit 11. The following is an excerpt from Joseph Hicks' written statement to Trooper Spradlin:
 {¶ 73} "Q: Has Bell discussed any other crimes?
 {¶ 74} "A: He's been wanting to escape. He's been talking about it ever since I got here. He's been asking me to ask my girl or anyone to get some guns and throw them over the fence. He's been talking crazy. He said he'll shoot his way out of here. He said he would get us brown clothes from M Dorm and we'd walk out on a visit pass.
 {¶ 75} "Q: Why did you go along with his plan?
 {¶ 76} "A: I felt like I had to. If I didn't I felt like my life was in danger. He's a crazy dude, when a guy talks about shooting and raping nurses and shit, puts me in a bad situation. I just want away from him."
 {¶ 77} Appellant now maintains that the above evidence was inadmissible under Evid.R. 404(B) and Evid.R. 403(A).
 {¶ 78} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, 180, 510 N.E.2d 343. Therefore, we will not disturb a trial court's evidentiary ruling unless we find said ruling to be an abuse of discretion; i.e. unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. State v. Adams (1980),62 Ohio St.2d 151, 157, 404 N.E.2d 144.
 {¶ 79} Evid.R. 404(B) states as follows:
 {¶ 80} "(B) Other crimes, wrongs or acts
 {¶ 81} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 82} In turn, Evid.R. 403(A) states as follows: "Exclusion mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 83} Appellant specifically argues that the above evidence was inadmissible under Evid.R. 404(B) to show appellant's criminal propensity. However, even assuming that such evidence was inadmissible we find that its admission was harmless based on the overwhelming evidence of appellant's guilt, which is set forth above. As is stated above, appellant was overheard by two corrections officers talking about his plans to break into the pharmacy. In addition, after appellant left the optometrist's room, a hole was found in the wall adjoining the pharmacy and a broken off piece of the optometrist's chair was found in the optometrist's room. In short, there was overwhelming evidence of appellant's guilt.
 {¶ 84} Appellant's sixth assignment of error is, therefore, overruled.
 VII {¶ 85} Appellant, in his final assignment of error, challenges his sentence. Appellant specifically maintains that his more than minimum sentence for each offense was unconstitutional pursuant to United Statesv. Booker (2005),543 U.S. 220, 125 S.Ct. 738, Blakely v. Washington
(2004), 542 U.S. 296, 124 S.Ct. 2531, and Apprendi v. New Jersey (2000),530 U.S. 466, 120 S.Ct. 2348. We agree.
 {¶ 86} Recently, the Ohio Supreme Court, in State v. Foster,109 Ohio St.3d 1, 845 N.E.2d 470, 2006-Ohio-856, found certain provisions of Ohio's sentencing statute unconstitutional because those provisions required judicial factfinding in order to exceed the sentence allowed simply as a result of a conviction or plea. Among these provisions was R.C. 2929.14(B), which provided for more than the minimum prison term.
 {¶ 87} To remedy Ohio's felony sentencing statutes, the Ohio Supreme Court, in Foster, severed the Blakely-offending portions that either create presumptive minimum or concurrent terms or require judicial factfinding to overcome the presumption. Foster at paragraph 97. Thus, the Court concluded " * * * that trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at paragraph 100.
 {¶ 88} Accordingly, because appellant's "more than the minimum" sentences are based upon an unconstitutional statute that was deemed void in Foster supra, appellant's seventh assignment of error is sustained and this matter is remanded to the trial court for a new sentencing hearing.
 {¶ 89} Accordingly, for the reasons set forth in this Opinion, the judgment of the Fairfield County Court of Common Pleas is hereby affirmed in part and reversed and remanded in part.
Edwards, J. Wise, P.J. and Boggins, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Fairfield County Court of Common Pleas is affirmed in part and reversed and remanded in part. Costs assessed to appellant.
[1] David Hicks is not related to Joseph Hicks.
[2] R.C. 2923.03 is the attempt statute.
[3] In Coleman, the state was permitted to amend the indictment from a charge of violating R.C. 2907.03(A)(5) to a charge of violating R.C.2907.03(A)(9).