OPINION *Page 2 
{¶ 1} On October 8, 2005, the Delaware County Grand Jury indicted appellant, Robert Taylor, III, on two counts of theft in violation of R.C. 2913.02, two counts of forgery in violation of R.C. 2913.31, and one count of securing writings by deception in violation of R.C. 2913.43. Said charges arose from appellant's employment with Autumn Wood Homes, owned by Kim Knoppe and Brad Halley. Autumn Wood Homes built and rented homes to individuals with bad credit histories. Appellant had worked his way up to sales and marketing director and limited partner when letters, bogus contracts, and a doctored money order were discovered in his office which purportedly evidenced his attempt to embezzle funds from the company.
 {¶ 2} A bench trial commenced on November 2, 2007. At the conclusion of the state's case-in chief, appellant sought a Crim. R. 29 acquittal and the state sought to amend one of the theft counts. The trial court permitted the amendment, and granted the Crim. R. 29 motion as to the remaining theft count, one of the forgery counts, and the deception count. The trial court found appellant guilty of the amended theft count and the remaining forgery count. By judgment entry filed January 17, 2007, the trial court sentenced appellant to an aggregate term of twenty-eight months in prison.
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 4} "THE TRIAL COURT'S VERDICT AS TO THE FORGERY CHARGE WAS CONTRARY TO LAW IN THAT IT WAS BOTH BASED UPON INSUFFICIENT EVIDENCE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THUS *Page 3 
DEPRIVED APPELLANT OF HIS RIGHT TO REQUIRE THE STATE TO PROVE HIS GUILT BEYOND A REASONABLE DOUBT AS GUARANTEED BY THE FIFTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION I, ARTICLE 10 OF THE OHIO CONSTITUTION."
 II {¶ 5} "THE TRIAL COURT ERRED AND CONTRAVENED CRIM.R.7(D) BY AMENDING COUNT ONE OF THE INDICTMENT TO CHANGE THE IDENTITY OF THE CRIME CHARGED; THEREBY, VIOLATING APPELLANT'S RIGHTS AS GUARANTEED UNDER THE FIFTH,SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."
 III {¶ 6} "THE COURT ERRED IN SENTENCING THE APPELLANT TO SERVE CONSECUTIVE PRISON SENTENCES FOR GRAND THEFT AND FORGERY WHEN THE TWO SENTENCES PROPERLY SHOULD HAVE MERGED; THEREBY VIOLATING APPELLANT'S RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATE CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION."
 I {¶ 7} Appellant claims his conviction for forgery was against the sufficiency and manifest weight of the evidence. We disagree.
 {¶ 8} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State *Page 4 v. Jenks (1991), 61 Ohio St.3d 259. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks at paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175. See also, State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."Martin at 175.
 {¶ 9} Appellant was convicted of forgery in violation of R.C. 2913.31(A)(2) which states the following:
 {¶ 10} "(A) No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following:
 {¶ 11} "(2) Forge any writing so that it purports to be genuine when it actually is spurious, or to be the act of another who did not authorize that act, or to have been executed at a time or place or with terms different from what in fact was the case, or to be a copy of an original when no such original existed."
 {¶ 12} Appellant argues the trial court indicated its belief of a lack of evidence, yet found him guilty of the forgery count: *Page 5 
 {¶ 13} "THE COURT: I understand that. Now, as to count three, the forgery count, there's no question that the documents are spurious. But there's been no evidence that anyone acted on that document. And the court is of the opinion, there has to be an act in reliance on the fraudulent act in an attempt to use it. There is no evidence in this record that they were found by Mr. Knoppe but no one's testified that this gentleman presented them, to him, to them and asked him to do it according-
 {¶ 14} "MR. OWEN: Your Honor, may I address that if I may? As to count three — we talking about three or four?
 {¶ 15} "THE COURT: Both three and five.
 {¶ 16} "MR. BIRCH: About four, your Honor.
 {¶ 17} "THE COURT: Four and five. Three is the money order.
 {¶ 18} "MR. OWEN: I'm not questioning three.
 {¶ 19} "THE COURT: Three — the concern I have with three is, Mr. Barrett has never testified or anyone on behalf of Mr. Barrett that they delivered the funds to the Defendant to go to the victim. We — and the court is concerned as you know we read between the lines, but without Mr. Barrett testifying I don't know how anyone can say that that money was tendered for Mr. Knoppe and/or Mr. Halley. But that goes back, that's three." T. at 248-249.
 {¶ 20} Appellant was sales and marketing director for Autumn Wood Homes and also was a limited partner. T. at 75, 80. He was paid a salary including an hourly rate and commissions. T. at 78. Tenants would bring payments to the office and they would be placed in the office drop box bolted to the floor. T. at 87-88. Mr. Knoppe was the only one who had the key to the drop box. T. at 88. Mr. Knoppe kept track of all the *Page 6 
checks and cash received in manual ledgers that were on his desk. T. at 90. As part of his duties, appellant posted the checks to the ledgers. T. at 91-92. Mr. Knoppe explained the inconsistencies in the records maintained by appellant as follows:
 {¶ 21} "Q. Now, in review of the records after Mr. Taylor's departure, were you able to determine whether there are any inconsistencies reflected in this ledger documents?
 {¶ 22} "A. Yes, if I can draw the Court's attention to the far left side of the ledger, where I got three check marks, then circle, followed by seven check marks, actually on seven, and then another two, and then so forth. What I did was, I attempted to trace the cash payments, a thousand, 45. I was able to trace back to my cash ledger, checks of February 2, `05, I was able to trace that thousand dollars back to the same with the February 11, `05 payment. I was able to trace that back. I never — I never received the next entry, that 2/28/05 payment of a thousand dollars, I never received that. The following payment, a thousand dollars, I did receive. This followed a pattern in my audit of cash down payment transactions, where Robert would take a $5,000 down payment and give me four. That way he's collecting his 150,000 from me over three years, and he's dipping in every chance he can in putting a thousand, 2,000 in his pocket." T. at 112-113.
 {¶ 23} Mr. Knoppe then explained how appellant forged a money order:
 {¶ 24} "Q. I show you what has been marked as state's exhibit 9. This would be for an address on Edmonton for Mr. Barrett. Did you review the payment history of Mr. Barrett, and determine whether or not there were any inconsistencies as it related to any records at Autumn Wood that Mr. Taylor had control over? *Page 7 
 {¶ 25} "A. Yes. Mr. Barrett is an older gentleman, retired, nice as the day is long. He, after Robert left, I called Mr. Barrett and pointed out to him that his ledger was short and he owes me some money.
 {¶ 26} "Q. How much money do you recall he owed you?
 {¶ 27} "A. A thousand 45 dollars.
 {¶ 28} "Q. I'm going to jump ahead and show you what's marked state's exhibit 15. In determining he was short a thousand dollars, did you try to determine if in fact that thousand dollars had been paid; did you look in your office to support that?
 {¶ 29} "A. Yes. I went into the file and I found this check number 419962649, dated March 4 of `05, state's exhibit 15, not in the file.
 {¶ 30} "Q. That would be, you said, a check or a money order?
 {¶ 31} "A. Money order, made out to me, there's no record of it being deposited. We looked every — I personally — it was not deposited, so I asked Mr. Barrett, you know, if he would just please contact the U.S. Bank and asked them to get a canceled money order copy." T. at 113-114.
 {¶ 32} In comparing the money order to the copy of the money order, Mr. Knoppe testified to the following:
 {¶ 33} "Q. And looking at the signature line, on the back of the check [copy], do you recognize the signature?
 {¶ 34} "A. Yes. Robert Taylor's.
 {¶ 35} "Q. Is there any indication that this money order was deposited into either your bank company or the bank account of Autumn Wood?
 {¶ 36} "A. No, it was not. *Page 8 
 {¶ 37} "Q. Did Mr. Taylor have the authority to take a money order that was presented by a tenant and insert his name and deposit it in an account other than the two accounts you referred to?
 {¶ 38} "A. No, he did not have that authority. He would have went to great lengths in copying the check and putting my name, putting it in the file as cover, and he even has it reflected as Roger O. Thornhill, which there is no tenant Roger O. Thornhill." T. at 115.
 {¶ 39} Upon review, we find this evidence is sufficient to establish beyond a reasonable doubt that appellant violated R.C. 2913.31(A)(2), and find no manifest miscarriage of justice.
 {¶ 40} Assignment of Error I is denied.
 II {¶ 41} Appellant claims the trial court erred in permitting the state to amend Count 1 of the indictment. We disagree.
 {¶ 42} Appellant argues the amendment violated Crim. R. 7(D) which states the following in pertinent part:
 {¶ 43} "The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment, information, or complaint, or to cure a variance between the indictment, information, or complaint and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has *Page 9 
been impanelled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury."
 {¶ 44} Appellant was originally indicted and tried under R.C. 2913.02(A)(1) which states, "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent." At the close of its case-in-chief, the state was permitted to amend the charge to R.C. 2913.02(A)(2) which states, "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [b]eyond the scope of the express or implied consent of the owner or person authorized to give consent."
 {¶ 45} The gravamen of this assignment is whether the amendment changed the name or identity of the crime. The element distinguishing R.C. 2913.02(A)(1) theft from (A)(2) theft is the issue of consent i.e., without consent or beyond the scope of the consent given. In State v.Bell, Fairfield App. No. 05-CA-67, 2006-Ohio-6560, ¶ 29-30, this court reviewed an amendment of a subdivision under the burglary statute, albeit prior to trial, and stated the following:
 {¶ 46} "In the case sub judice, since the amendment was a subpart of the original statute, namely, R.C. 2911.12, the name or identity of the crime was not changed and the amendment was proper. See State v.Coleman, Marion App. No. 9-03-23, 2003-Ohio-6440. `Because the amendment herein merely changed the violation from one *Page 10 
subpart of the statute to another, the name and identity of the crime remained the same.' Id. at paragraph 14. * * * See also State v. McCall (May 10, 1985), Lucas App. No. L-84-321, 1985 WL 7122 in which the court held that the trial court did not err in granting the State's motion to amend the indictment, with respect to a charge of aggravated burglary, `so as to change appellant's mode of entry by stealth or deception, instead of force.' The court, in McCall, held that the amendment did not change the name or identity of the crime, but merely indicated a different mode of entrance.
 {¶ 47} "Based on the foregoing, we find that the trial court did not err in granting appellee's Motion to Amend the Indictment since the amendment did not change the name or identity or the crime charged." (Footnote omitted.)
 {¶ 48} Furthermore, in State v. O'Brien (1987), 30 Ohio St.3d 122,127-128, the Supreme Court of Ohio held the following:
 {¶ 49} "Accordingly, we hold that an indictment which does not contain all the essential elements of an offense may be amended to include the omitted element, if the name or the identity of the crime is not changed, and the accused has not been misled or prejudiced by the omission of such element from the indictment."
 {¶ 50} As in Bell, the amendment in this case, from subsection (A)(1) to (A)(2), did not "change the name or identity or the crime charged." The bill of particulars filed on August 1, 2006 stated the following as to Count 1, the theft count:
 {¶ 51} "Nature of Conduct: Robert O. Taylor, III did, with purpose to deprive Autumnwood Homes, 544 Enterprise Drive, Lewis Center, Ohio, the owner of property, to wit: cash, money orders, and rental income, knowingly obtain or exert control over said property without the consent of Autumnwood Homes, the owner or person *Page 11 
authorized to give consent, the value of said property or services being $5,000 or more but less than $100,000.
 {¶ 52} "Date of Offense: During period of January 2004 through July 2005
 {¶ 53} "Location of Offense: Autumnwood Homes, 544 Enterprise Dr., Lewis Center, Ohio
 {¶ 54} "Level of Felony: Fourth Degree"
 {¶ 55} There was sufficient evidence in the record to establish that appellant acted both "without consent" and "beyond the scope of the consent given" in embezzling the funds. T. at 118-120, 125-126, 133, 136, 139-140. Appellant was not misled or prejudiced by the amendment.
 {¶ 56} Upon review, we find the trial court did not err in permitting the state to amend Count 1.
 {¶ 57} Assignment of Error II is denied.
 III {¶ 58} Appellant claims the trial court erred in sentencing him to consecutive sentences. We disagree.
 {¶ 59} Appellant argues the sentences for grand theft and forgery should have been merged because it is clear the funds from the forged money order "were part of the same funds that comprised the aggregate amount of $5,200 that resulted in the finding that the theft was a fourth degree felony * * *." Appellant's Brief at 13. Appellant argues the forgery was incidental to the theft and the two offenses were not committed with a separate animus. *Page 12 
 {¶ 60} The elements of forgery and theft have been cited supra. Clearly, the act of forgery is a separate and distinct act from theft therefore, they are not allied offenses of similar import. See,State v. Habash, (January 31, 1996), Summit App. No. 17073. The commission of one crime does not result in the commission of the other. Id.
 {¶ 61} Appellant also argues the trial court did not comment as to why consecutive sentences were appropriate. Trial courts have full discretion to impose a sentence within the statutory range and are not required to make findings or give reasons for imposing maximum, consecutive, or more than the minimum sentences. State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856.
 {¶ 62} During the sentencing hearing, the trial court noted appellant had a prior conviction for embezzlement, he violated the trust of his employer, and he was not amenable to community control sanctions. January 10, 2007 T. at 12. In ordering the sentences to be served consecutively, the trial court noted the "Defendant's record and his complete disregard for the rights of others, and that the Court feels that he will keep stealing from an employer and that he needs to impose consecutive — I will impose consecutive sentences, it's the only way to protect society." Id. at 12-13.
 {¶ 63} Upon review, we find the trial court did not err in sentencing appellant. *Page 13 
 {¶ 64} The judgment of the Court of Common Pleas of Delaware County, Ohio is hereby affirmed.
 By Farmer, P.J. Edwards, J. and Delaney, J. concur. *Page 14 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Delaware County, Ohio is hereby affirmed. *Page 1