OPINION
{¶ 1} Defendant-Appellant, Darrell Coleman Sr., appeals a judgment of the Marion County Common Pleas Court convicting him of rape in violation of R.C. 2907.02(A)(1)(b), gross sexual imposition in violation of R.C. 2907.05(A)(4), sexual battery in violation of R.C. 2907.03(A)(9), and contributing to the delinquency of a minor in violation of R.C. 2919.24
(A)(2). Coleman presents a number of issues for our review including the manifest weight of the evidence and the trial court's denial of several of his motions. After reviewing the entire record and the applicable law, we find that none of Coleman's assignments of error should be sustained. Accordingly, we affirm the decision of the trial court.
 {¶ 2} In August of 2002, Stacy Coleman, the ten year old granddaughter of defendant Coleman, and Amanda Andrick, a sixteen year old friend of the family, both spent the night at Coleman's house. At the time, Coleman was fifty one years old. Sometime during the night, Amanda and Stacy began playing a game of "truth or dare" with Coleman. The game began in Coleman's living room and eventually moved into his bedroom. Both parties agree that the game initially involved such dares as the two girls kissing Coleman on his cheek. However, what the game consisted of after it moved into the bedroom is a matter of contention between the parties.
 {¶ 3} Amanda and Stacy allege that inside the bedroom Coleman touched both of their breasts pursuant to a dare. Further, both girls allege Coleman pulled his pants down and had both girls perform oral sex on him pursuant to another dare. Coleman denies that any inappropriate sexual contact occurred. He maintains that his son paid each of the girls to accuse Coleman of the sexual abuse because his son wanted him in jail so he could steal Coleman's belongings.
 {¶ 4} The jury returned a verdict of guilty on all four charges, and the court scheduled sentencing and sexual predator hearings. Prior to these hearings, Coleman came into possession of a note Amanda had written to a friend. The note insinuated that she had lied about the sexual contact with Coleman. Coleman filed a motion for a new trial, and a hearing was held on the motion. The state produced a verified affidavit of Amanda claiming the sexual contact had occurred and stating that she had not lied during her testimony. The court did not find Coleman's evidence sufficient to warrant a new trial and denied his motion.
 {¶ 5} The trial court then found Coleman to be a sexual predator and sentenced him to serve nine years on the rape charge, four years on the gross sexual imposition charge, four years on the sexual battery charge, and 180 days on the contributing to the delinquency of a minor charge. All of Coleman's sentences were ordered to run concurrently. From these proceedings Coleman appeals presenting seven assignments of error for our review.
 Assignment of Error I The trial court erred in denying appellant's request to removea juror for cause who stated that based on his prior jury servicein a sexual molestation case, he did not believe he could be fairand impartial.
 {¶ 6} In the first assignment of error, Coleman contends that it was error for the trial court to deny his challenge for cause of a potential juror. Coleman maintains certain remarks made by the potential juror during the voir dire process reflected the juror's inability to serve as fair and impartial.
 {¶ 7} R.C. 2313.42(J) requires the dismissal of a juror for cause if, "he discloses by his answers that he cannot be a fair and impartial juror or will not follow the law as given to him by the court." Trial courts must be given discretion in determining a juror's ability to be impartial,[1] and the decision not to grant a challenge for cause will be reversed only upon an abuse of that discretion.[2] An abuse of discretion indicates a decision that is unreasonable, arbitrary or unconscionable.[3]
 {¶ 8} During the general voir dire, the trial court informed the potential jurors that the case involved alleged child abuse and asked if any of them might be unable to hear the case in a fair and impartial manner. One juror raised his hand and was questioned further in the judge's chambers out of the presence of the other potential jurors.
 {¶ 9} When questioned in the judge's chambers this juror revealed that he had previously served on a jury that had found a Boy Scout leader guilty of committing sexual abuse. He further indicated that he would be more willing to understand discrepancies in a child's version of events than in an adult's. However, he also stated that he would be able to serve on the jury as both fair and impartial. When asked about any preconceived notions he might bring into the trial, this juror stated that he would be fair and not assume Coleman had committed the crime just because a child alleged it had happened. The trial court made a specific inquiry of this juror and asked him if he was "a blank page," to which he responded, "I'm blank."
 {¶ 10} Reviewing the transcript, we cannot say that the trial court acted unreasonably, arbitrarily, or unconscionably in finding that the juror would be an impartial juror. While the juror may have represented that he would be more understanding of discrepancies in a child's testimony, he also indicated that he would go into the trial without any preconceived notions of guilt or credibility.
 {¶ 11} Accordingly, we cannot find an abuse of discretion by the trial court in refusing Coleman's challenge for cause of the juror. Coleman's first assignment of error is therefore overruled.
 Assignment of Error II The trial court erred in granting Appellee's motion to amend theindictment on the second day of trial.
 {¶ 12} In the second assignment of error, Coleman asserts that it was error for the trial court to allow the state to amend count three of the indictment from a charge of violating R.C. 2907.03(A)(5) to a charge of violating R.C. 2907.03(A)(9). Coleman claims this amendment caused him substantial hardship.
 {¶ 13} The original indictment would have required the state to prove that Coleman was acting in the capacity of "in loco parentis" over Amanda at the time the sexual abuse occurred. The amended indictment only required that the state prove Coleman had, "temporary or occasional disciplinary control"[4] over Amanda.
 {¶ 14} A trial court may at any time before, during, or after a trial amend an indictment provided no change is made in the name or identity of the crime charged.[5] In State v. Hanselman[6] the twelfth district considered the effect of an amendment of the indictment from R.C. 2907.03(A)(2) to R.C. 2907.03(A)(5). We agree with their finding that because the amendment was a subpart of the original statute, the name or identity of the crime had not been changed and the amendment was proper. Because the amendment herein merely changed the violation from one subpart of the statute to another, the name and identity of the crime remained the same.
 {¶ 15} Coleman also argues that the indictment caused him substantial hardship. He claims that he was unable to adequately prepare a defense against the new charge. However, Coleman fails to point this court to any specific examples of hardship actually suffered. The same people Coleman would have been required to cross examine and present as witnesses in order to refute the notion that he was acting "in loco parentis" are the same people he would have to cross examine and present to refute the notion that he had temporary disciplinary control.
 {¶ 16} Furthermore, the concepts are very closely linked together. The trial strategy and preparation required to defend one is very similar to the other.
 {¶ 17} Therefore, we find that the amendment to the indictment did not change the name or identity of the crime charged and caused Coleman no substantial hardship. Accordingly, Coleman's second assignment of error is overruled.
 Assignment of Error III The jury's guilty verdict on all four counts was against the manifestweight of the evidence.
 Assignment of Error IV The trial court erred in failing to grant Appellant's motion forjudgment of acquittal.
 {¶ 18} In the third and fourth assignments of error, Coleman maintains that his conviction was against the manifest weight of the evidence and that the trial court erred by denying his motion for judgment of acquittal. Specifically, these assignments of error address the adequacy of the evidence to establish that Coleman had temporary disciplinary control over Amanda at the time of the abuse.
 {¶ 19} When reviewing the denial of a motion for judgment of acquittal, an appellate court must evaluate whether, "the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt."[7]
 {¶ 20} The Bridgeman standard, however, "must be viewed in light of the sufficiency of evidence test[.]"[8] An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.[9]
 {¶ 21} R.C. 2907.03(A)(9) states,
(A) No person shall engage in sexual conduct with another, notthe spouse of the offender, when any of the following apply:
* * *
(9) The other person is a minor, and the offender is the other person'sathletic or other type of coach, is the other person's instructor, is theleader of a scouting troop of which the other person is a member, or is aperson with temporary or occasional disciplinary control over the otherperson.
 {¶ 22} Coleman asserts a judgment of acquittal was proper because the evidence at trial was insufficient to prove that he had temporary disciplinary control over Amanda. This contention is not supported by a review of the record. The evidence presented showed that the house was rented under Coleman's name and that he was the only adult awake during the game of truth or dare. Furthermore, Amanda testified that Coleman was indeed in charge during the game and that she would have taken disciplinary orders from him.
 {¶ 23} Viewing all of the evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found that Coleman was in temporary disciplinary control over Amanda and reasonable minds would not have been compelled to reach the opposite conclusion. Accordingly, we find that it was proper for the court to deny Coleman's motion for judgment of acquittal, and Coleman's fourth assignment of error is therefore overruled.
 {¶ 24} When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.[10] Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment.[11]
 {¶ 25} At trial, it was undisputed that Coleman was a 51 year old grandfather playing truth or dare late at night in his bedroom with his ten year old granddaughter and her sixteen year old friend. At trial, both Stacy and Amanda testified to actually performing and observing the other perform oral sex on Coleman. There were also numerous other witnesses who gave prior consistent statements of the victims describing their sexual abuse.
 {¶ 26} Coleman's assertion is the jury should not have believed the victims because of their prior inconsistent statements and the poor techniques of the investigating officers. However, the jury was aware of the prior inconsistent statements and discrepancies of the witnesses. It was free to consider and use those in evaluating the truthfulness of the witnesses. Further, the jury also had before it Dr. Bram's testimony concerning the types of procedures used when questioning a suspected child abuse victim and the consequences of using improper procedures.
 {¶ 27} Coleman cross examined both the victims and other witnesses concerning their prior inconsistent statements. He also cross examined the investigating officers extensively regarding their investigative techniques. In closing arguments, Coleman tied all of this information together and explained to the jury why he felt they should not believe the children.
 {¶ 28} The jury was free to use all of the information available to it in determining the credibility of the witnesses. It would have been permissible for the jury to discount the victims' testimony because of the prior inconsistent statements or poor investigative techniques. However, it is equally permissible for the jury to believe the victims' testimony as the true events which occurred.
 {¶ 29} Colman also argues that the jury clearly lost its way by finding that Amanda was under his temporary disciplinary control. As discussed above in the consideration of Coleman's fourth assignment of error, there was ample evidence to support such a finding by the jury.
 {¶ 30} Having reviewed the entire record, we determine that the jury clearly did not lose its way nor create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Therefore, Coleman's third assignment of error is overruled.
 Assignment of Error V Appellant was denied his constitutional right to effective assistanceof counsel.
 {¶ 31} In the fifth assignment of error, Coleman contends that his defense counsel's performance at trial constituted ineffective assistance of counsel. Specifically, Coleman cites defense counsel's failure to request two in camera inspections, failure to obtain Amanda's school records, and failure to move for a mistrial.
 {¶ 32} The Supreme Court has developed a two prong test for evaluating ineffective assistance of counsel claims.[12] Under the first prong, counsel's performance must be shown to have been deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment."[13] The second prong requires a showing that the deficient performance caused the defendant prejudice.[14] Prejudice will be found where there is a reasonable probability that, but for counsel's errors, the results of the trial would have been different.[15]
Coleman has the burden of proving both prongs of this test.[16] Thus, Coleman must show that his counsel erred and that, absent such error, the outcome of the trial would have been different. Moreover, Coleman must overcome the presumption that, "the challenged action `might be considered sound trial strategy.'"[17]
 {¶ 33} Coleman's first ineffective assistance of counsel claim is that his attorney erred in failing to request an in camera interview of a juror related to a prosecution witness. During the voir dire, the potential jurors were asked whether they knew any of the potential witnesses. One prospective juror responded that potential prosecution witness Katie Niebert was her niece. She was then asked how she would feel if Katie testified and responded that she would, "probably believe" her.
 {¶ 34} Coleman claims that this statement wrongfully gave the jury an indication that Katie's testimony would be credible and was heard by the jury because of defense counsel's failure to immediately request an in camera inspection of this juror once she stated she was related to a prosecution witness. However, after the juror made the statement, defense counsel made an immediate request of the prosecution to refrain from eliciting any further comments about the credibility of potential witnesses from the potential jurors. There was no need for an in camera inspection because defense counsel had eliminated the possibility of further potential mistakes.
 {¶ 35} Furthermore, Katie's testimony was largely inconsequential. She stated that she had been in the home the night the abuse occurred and that Stacy seemed a little down the next morning. However, she testified that she did not know of any game of truth or dare and gave no testimony directly relating to the sexual abuse.
 {¶ 36} Accordingly, even if defense counsel did err by failing to request an immediate in camera inspection of the juror, we find that it was harmless error. Coleman has failed to meet his burden of proving that absent the juror's statement the outcome would have been different. Therefore, we fail to find ineffective assistance of counsel based on Coleman's first claim.
 {¶ 37} Coleman next claims that his attorney erred in failing to request an in camera review of the victims' grand jury testimony to determine if it contained any prior inconsistent statements.
 {¶ 38} An accused is not entitled to inspect grand jury transcripts unless there is a showing by the defense that a particularized need for disclosure exists which outweighs the need for secrecy.[18] A particularized need will be found when, "it is shown where from a consideration of all the surrounding circumstances it is probable that the failure to disclose the testimony will deprive the defendant of a fair adjudication of the allegations placed in issue by the witness' trial testimony."[19]
 {¶ 39} Herein, Coleman has failed to demonstrate that a particularized need existed which would have given him the right to inspect the grand jury transcripts. Coleman makes an unsubstantiated claim that the grand jury transcripts might contain some impeachable material. Further, Coleman at trial already had access to and did in fact use prior inconsistent statements to impeach the credibility of the witnesses. He fails to demonstrate how even if there were prior inconsistent statements made during the grand jury proceedings they would have added substantially to his case. Accordingly, we find that the request would have been denied and that it was not error for his lawyer to fail to make such request.
 {¶ 40} Coleman's third assertion that his defense counsel's performance was ineffective involves the failure of defense counsel to obtain the victim's school records prior to trial. He argues that defense counsel should have used the Crim.R. 17(C) subpoena powers to gain access to such documents.
 {¶ 41} The party attempting to subpoena documents must proffer a need for the particular files to be produced.[20] Coleman never proffers such a need. He merely speculates that the victim's school filesmay have contained some impeachable material. Without more, such a subpoena would not have been granted by the court. Therefore, we cannot find that it was error for defense counsel not to pursue such a subpoena.
 {¶ 42} Coleman's final ineffective assistance of counsel claim is that it was error for defense counsel to fail to move for a mistrial upon learning that spectators in the courtroom were consulting with witnesses prior to their testimony. A review of the record shows that in fact it was Coleman's witnesses who were being informed of the proceedings not the state's witnesses. We cannot find error in defense counsel failing to request a mistrial based upon the misconduct of his own witnesses.
 {¶ 43} Accordingly, we fail to find merit in any of Coleman's individual ineffective assistance of counsel claims, and we therefore overrule his fifth assignment of error.
 Assignment of Error VI Since Appellee failed to present clear and convincing evidence thatappellant was likely to engage in the future in one or more sexuallyoriented offenses, the trial court erred in finding appellant a sexualpredator.
 {¶ 44} In the sixth assignment of error, Coleman maintains there was insufficient evidence to support the trial court's finding that he was a sexual predator. Specifically, he claims that the evidence at trial did not clearly and convincingly demonstrate that he was likely to engage in the future in one or more sexually oriented offenses.
 {¶ 45} A "sexual predator" is defined by the Ohio Revised Code as a person who "has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented crimes."[21]
 {¶ 46} The legislature has produced a non-exclusive list of ten factors trial courts should consider when classifying someone as a sexual predator.[22] Trial courts are given wide discretion in deciding how much weight, if any, they give to each of the factors.[23] "Rigid rules generally have no place in this determination, as courts should apply the enumerated factors and consider the relevance, application, and persuasiveness of individual circumstances on a case-by-case basis."[24]
 {¶ 47} After examining all of the evidence and applying the statutory factors of R.C. 2950.09(B)(3), the court must make a determination of whether the sexual predator label is supported by clear and convincing evidence.[25] Clear and convincing evidence is an intermediate degree of proof, it requires more than a mere preponderance of the evidence, but it is less demanding than a finding beyond a reasonable doubt.[26] A reviewing appellate court must examine the entire record to determine whether the evidence satisfies the clear and convincing standard.[27]
 {¶ 48} The trial court made the specific finding at the sexual predator hearing that Coleman was likely to commit future sexually oriented crimes. In making this determination, the court considered Coleman's past criminal history and the circumstances surrounding the crime. The circumstances of this crime were that a fifty one year old grandfather took advantage of his position as authority figure to facilitate sexual contact with his ten year old granddaughter and her sixteen year old friend. Coleman showed no signs of remorse and never took responsibility for his actions. Further, Coleman had previously been convicted of several other offenses.
 {¶ 49} Having reviewed the entire record, we find that there is clear and convincing evidence to support the trial court's finding that Coleman is likely to engage in future sexually oriented crimes. Therefore, Coleman's sixth assignment of error is overruled.
 Assignment of Error VII The trial court committed error by denying Appellant's motion for newtrial.
 {¶ 50} In the seventh assignment of error, Coleman argues that his motion for a new trial should have been granted based upon new evidence discovered after the trial. The evidence Coleman claims merits a new trial is a letter Amanda wrote to a friend claiming that Coleman's son had wanted her to lie.
 {¶ 51} A motion for a new trial based on newly discovered evidence should only be granted when it is shown that the new evidence,
(1) discloses a strong probability that it will change the result if anew trial is granted, (2) has been discovered since the trial, (3) issuch as could not in the exercise of due diligence have been discoveredbefore the trial, (4) is material to the issues, (5) is not merelycumulative to former evidence, and (6) does not merely impeach orcontradict the former evidence[28]
A decision not to grant a motion for a new trial will only be reversed upon a finding that the trial court abused its discretion.[29] An abuse of discretion indicates a decision which is unreasonable, arbitrary, or unconscionable.[30]
 {¶ 52} The letter Amanda wrote to her friend stated, "little darell tryed everything to get his dad locked up because big darell quit giving Anna + Darell money so darell wanted us to lie." Coleman claims that this letter constitutes new evidence which entitles him to another trial.
 {¶ 53} This court has previously upheld the decision of the trial court to deny a new trial motion based upon the recantation of prior testimony.[31] If a new trial were granted, Coleman would merely be able to use the letter for the impeachment of Amanda. This clearly violates the sixth prong of the Petro standard that requires the newly discovered evidence to be more than impeachment evidence.
 {¶ 54} Further, the state produced a verified affidavit from Amanda in response to the motion for a new trial. The affidavit was dated after the letter she had written and stated that she had told the truth during her testimony and that the sexual abuse had occurred. Even if the first letter can be characterized as a recantation, there was a subsequent repudiation of that recantation.
 {¶ 55} Accordingly, we fail to find that the trial court abused its discretion in denying Coleman's motion for a new trial. Therefore, Coleman's seventh assignment of error is overruled.
 {¶ 56} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
BRYANT, P.J., and SHAW, J., concur.
[1] State v. Nields (2001), 93 Ohio St.3d 6, 20, citing State v.Williams (1983), 6 Ohio St.3d 281, 288.
[2] Nields, 93 Ohio St.3d at 21, citing State v. Tyler (1990),50 Ohio St.3d 24, 31; see, also, Berk v. Matthews (1990),53 Ohio St.3d 161, syllabus.
[3] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[4] R.C. 2907.03(A)(9).
[5] Crim.R. 7(D); State v. Staples (1993), 88 Ohio App.3d 359,362.
[6] (August 12, 1985), 12th Dist. No. CA84-11-016, unreported.
[7] State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus.
[8] State v. Foster (Sept. 17, 1997), 3rd Dist. No. 13-97-09 unreported, citing State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds in State v. Smith (1997), 80 Ohio St.3d 89.
[9] Jenks, 61 Ohio St.3d at paragraph two of the syllabus.
[10] State v. Thompkins (1997), 78 Ohio St.3d 380 paragraph two of the syllabus, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
[11] Id.
[12] Strickland v. Washington (1984), 466 U.S. 668.
[13] Id at 687.
[14] Id.
[15] Id at 694, see, also, State v. Bradley (1989), 42 Ohio St.3d 136,142-143.
[16] State v. Lott (1990), 51 Ohio St.3d 160, 175.
[17] Strickland, 466 U.S. at 689, quoting Michel v. Louisiana (1955),350 U.S. 91, 101.
[18] State v. Greer (1981), 66 Ohio St.2d 139, paragraph two of the syllabus, citing in State v. Patterson (1971), 28 Ohio St.2d 181, paragraph three of the syllabus.
[19] Greer, 66 Ohio St.2d at paragraph three of the syllabus.
[20] State v. Bundy (1985), 20 OhioSt.3d 51, 52-53.
[21] R.C. 2950.01(E)(1).
[22] R.C. 2950.09(B)(3).
[23] State v. Thompson (2001), 92 Ohio St.3d 584, paragraph one of the syllabus; State v. Wayne (Mar. 14, 2002), 3rd Dist. No. 11-01-08, unreported.
[24] State v. Mckinniss, 153 Ohio App.3d 654, 2003-Ohio-4239, at ¶7, citing State v. Robertson, 147 Ohio App.3d 94, 2002-Ohio-494, at ¶ 20; see, also, State v. Dennis (Sept. 7, 2000), 3rd Dist. No. 8-2000-08, unreported; State v. Dewitt (Nov. 15, 2000), 3rd Dist. No. 14-2000-21, unreported.
[25] R.C. 2950.09(B)(4); State v. Eppinger (2001), 91 Ohio St.3d 158,163.
[26] State v. Schiebel (1990), 55 Ohio St.3d 71, 74, citing Cross v.Ledford (1954), 161 Ohio St. 469, 477.
[27] Schiebel, 55 Ohio St.3d at 74.
[28] State v. Petro (1947), 148 Ohio St. 505, syllabus.
[29] Petro, 148 Ohio St. at 507-508; State v. Jones (Dec. 24, 1992), 3rd Dist. Nos. 8-92-20, 8-92-21, 8-92-30 and 8-92-31, unreported.
[30] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[31] State v. Tijerina (1994), 99 Ohio App.3d 7, 12; Jones supra; Statev. Howard (Nov. 18, 1991), 3rd Dist. No. 9-91-34, unreported.