[Cite as *State v. Fagan*, 2012-Ohio-5135.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

LINDSEY R. FAGAN,

    DEFENDANT-APPELLANT.

CASE NO. 3-11-20

**O P I N I O N**

Appeal from Crawford County Common Pleas Court
Trial Court No. 11-CR-0117

**Judgment Affirmed**

Date of Decision: November 5, 2012

APPEARANCES:

    *Shane M. Leuthold* **for Appellant**

    *Clifford J. Murphy* **for Appellee**

**SHAW, P.J.**

{¶1} Defendant-appellant Lindsey R. Fagan ("Fagan") appeals the November 3, 2011 judgment of the Crawford County Court of Common Pleas sentencing her to 36 months in prison following a jury trial wherein she was found guilty of Robbery in violation of R.C. 2911.02(A)(3), a felony of the third degree.

{¶2} The facts relevant to this appeal are as follows. William Gasuras ("Gasuras") owned a restaurant called Little Athens in Bucyrus, Ohio. On January 24, 2011, shortly after 8 p.m., Gasuras was walking out to his vehicle after closing down the restaurant with a moneybag in his hand. As Gasuras moved toward his car a person later identified to be Joshua White ("White") approached Gasuras from behind and yanked the moneybag away from Gasuras. White then took off running along with another individual.

{¶3} Gasuras pursued the individuals, but being 70 years old, he was unable to keep up. Gasuras stopped after roughly a block and asked two people that had pulled up in a truck to call the police. The individuals assisted Gasuras in attempting to follow the two robbers but all three were ultimately unsuccessful.

{¶4} Eventually White was caught and confessed to robbing Gasuras. During White's confession he implicated Fagan as the other individual involved in the robbery.

2

{¶5} On July 8, 2011, Fagan was indicted for one count of Robbery in violation of R.C. 2911.02(A)(3), a felony of the third degree. Although the indictment cited the (A)(3) *section* of Robbery statute requiring the State to prove the "[u]se or threat[] of the immediate use of force," the indictment cited the *language* consistent with the (A)(2) section of Robbery requiring the State to prove "physical harm."

{¶6} On October 27-28, 2011, the case proceeded to a jury trial. At trial Gasuras testified that he was certain Fagan was the other individual that robbed him having gotten a good look at her when she stopped momentarily under a light while he was in pursuit. White testified at trial on behalf of the State that he and Fagan had planned the robbery roughly a month in advance and that Fagan was the other person with him that night. Tiffany Gray, an acquaintance of Fagan, testified to seeing Fagan and White in her yard near the time of the robbery. The State then rested its case.

{¶7} After the State rested, defense counsel made a Criminal Rule 29 motion for acquittal, arguing that no physical harm had been shown during the robbery to comport with the *language* cited in the indictment, and that no use or threat of force had been shown to satisfy the *statute* cited in the indictment. Further, defense counsel argued that if the State was allowed to amend its indictment to change the language to comply with the cited section of the statute,

3

the defense was prejudiced by its inability to cross-examine the State's witnesses on the element of "force" rather than "harm."

{¶8} Ultimately the court overruled defense counsel's motion, allowing an amendment to the indictment holding that as the correct statutory section comporting with the evidence was cited in the indictment, defense counsel could hardly claim surprise. Further, the court found sufficient evidence had been presented to prove all of the elements of Robbery in violation of R.C. 2911.02(A)(3).

{¶9} Fagan then presented her defense, beginning with the testimony of the two people from the truck who assisted Gasuras in trying to chase the robbers. The two people both testified that they did not think Fagan was one of the two people they saw that night. Fagan then called her father to present an alibi. Fagan's father testified that Fagan was home around the time of the incident and could not have had enough time to sneak out and commit the crime in the window of time where he did not observe her.

{¶10} On October 28, 2011 Fagan was found guilty of Robbery by the jury. Sentencing was set for October 31, 2011. At the sentencing hearing, Fagan was sentenced to 36 months in prison with credit for time served.[1]

---

[1] Fagan was also sentenced to pay $894 in restitution to Gasuras, and sentenced to pay a $250 fine. Fagan was given credit for 102 days served.

{¶11} On November 3, 2011, the court filed its judgment entry memorializing Fagan's sentence. It is from this judgment that Fagan appeals, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR 1**
**APPELLANT'S CONVICTION FOR ROBBERY SHOULD BE REVERSED BECAUSE THE EVIDENCE ADDUCED AT TRIAL WAS LEGALLY INSUFFICIENT TO PROVE BEYOND A REASONABLE DOUBT ALL THE ELEMENTS OF ROBBERY.**

**ASSIGNMENT OF ERROR 2**
**THE JUDGMENT AND JURY VERDICT ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

**ASSIGNMENT OF ERROR 3**
**THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIM.R. 29.**

**ASSIGNMENT OF ERROR 4**
**THE TRIAL COURT ERRED WHEN ALLOWING THE STATE TO AMEND THE INDICTMENT AFTER ITS CASE IN CHIEF, SINCE IT DID NOT ALLOW THE DEFENSE TO CROSS EXAMINE THE STATE'S WITNESSES REGARDING THE ELEMENT OF FORCE.**

{¶12} In the interest of clarity, we elect to address some of the assignments of error together, and out of the order that they are raised.

*Fourth Assignment of Error*

{¶13} In her fourth assignment of error, Fagan argues that the trial court erred in allowing the State to amend its indictment after its case-in-chief since Fagan could not cross examine the State's witnesses regarding the element of

force. Specifically, Fagan contends that allowing the State to amend the wording of its indictment to comport with the statute cited in the indictment was error as it changed the element necessary to be proven to "force" rather than "harm."

{¶14} The pertinent portion of the indictment in this case reads as follows:

**The Grand Jurors of the County of Crawford in the name and by the authority of the State of Ohio, upon their oaths to find and present that on or about the 24th day of January, 2011, in Crawford County, Ohio, Lindsey R. Fagan while aiding and abetting Joshua D. White, did,**

**Recklessly in attempting, or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense and did inflict or attempt to inflict, or threaten to inflict physical harm on the victim, in violation of Ohio Revised Code Section 2911.02(A)(3) ROBBERY, a felony of the third degree.**

**In violation of the Ohio Revised Code, Title 29, Section 2911.02 and against the peace and dignity of the State of Ohio.**

(Doc. 1).

{¶15} The statute and subsections for Robbery pertinent to this case read as follows:

**(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:**

**\* \* \***

**(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;**

6

**(3) Use or threaten the immediate use of force against another.**

R.C. 2911.02(A).

**{¶16}** In the indictment, the State cited Fagan for a violation of R.C. 2911.02(A)(3).  However, the State cited the *language* consistent with a violation of R.C. 2911.02(A)(2) in the indictment.  This first became an issue when defense counsel made a Criminal Rule 29 motion for acquittal at the close of the State's case.  Arguing in favor of the Rule 29 motion, defense counsel contended first that the State had not shown any harm to Gasuras during the robbery to prove the *language* cited in the indictment, and second that no force had been shown to prove the *statute* cited in the indictment.  (Tr. at 129).

**{¶17}** Defense counsel then challenged the appropriateness of allowing the State to amend the indictment.  The court responded by saying, "I don't think you can claim surprise since the number cited and the degree of the felony is the F-3 and there can be no mistake.  * * * I would see a bigger argument * * * if I was letting them * * * try to prove the F-2, which is the language they used."  (Tr. at 134).

**{¶18}** When further discussing the Rule 29 motion, the following exchange occurred between the court and defense counsel:

> **THE COURT:  * * * [P]erhaps your motion would be better – been better served as a motion attacking the deficiency of the Indictment prior to trial.**

7

**MR. LEUHOLD: I didn't realize it, Your Honor, until – until lunch and I started thinking why is he asking about force? So then we went back over the lunch hour and did some case law research and some statutory research and that's how we discovered it.**

**THE COURT: Clearly, they've got the right * * * section that comports to the truth that's been adduced at trial. And it indicates felony of the third degree. The harm, inflicted harm, would be a more serious felony, that would be under (A)(2), and that would be a felony * * * of the second degree.**

**So based on the Court's, uhm, feeling that there was no surprise involved here, that the State's allowed to comport their evidence and, the fact that even addressing your argument on force, whether or not there's sufficient evidence, the Court does find that there has been sufficient evidence of the crime upon which reasonable minds could differ. Therefore, they could easily find guilt. So your motion is overruled.**

(Tr. at 135).

{¶19} Based upon the record and the foregoing discussion contained in the record, we find that the trial court did not actually "amend" the indictment to conform to new evidence developed at trial. The trial court merely amended the language in the indictment to conform to the statutory section already cited in the indictment.

{¶20} However, even viewing what the trial court did as an "amendment" of the indictment to conform to the evidence, "[a] trial court may at any time before, during, or after a trial amend an indictment provided no change is made in

8

the name or identity of the crime charged." *State v. Coleman*, 3d. Dist. No. 9-03-23, 2003-Ohio-6440 ¶ 14, citing Crim.R. 7(D). We have held previously that when an amendment changes a charge from one part of a statute to "a subpart of the original statute, [and] the name or identity of the crime had not been changed * * * the amendment was proper." *Id.*

{¶21} Here any "amendment" to the indictment was done merely to comport with the statutory subsection already cited and the evidence presented. Allowing such an amendment is consistent with both Crim.R. 7(D) and our own caselaw. *See Coleman*, *supra* at ¶ 14.

{¶22} Furthermore, while Fagan argues that she was precluded from cross-examining the State's witnesses on the element of "force," her counsel never moved to recall any witnesses to cross-examine them on the element of force during the discussion of the Rule 29 motion. In addition, during the trial, Fagan's counsel specifically cross-examined the victim, Gasuras, as to how the moneybag was taken from him, if he was touched, etc., diminishing any claim of prejudice. (Tr. at 79-89). Finally, the case went to the jury under an appropriate "force" instruction. Based on the foregoing, we find no error in allowing the State to comport the language in the indictment to the statute cited, or, as it is argued, allowing the State to amend its charge to the evidence presented.

{¶23} Accordingly, Fagan's fourth assignment of error is overruled.

*First and Third Assignments of Error*

**{¶24}** In her first and third assignments of error Fagan argues that there was legally insufficient evidence to convict her of robbery and that the court erred by denying her Crim.R. 29 motion for acquittal. Specifically, Fagan contends that no "force" was proven to satisfy that particular element of robbery.

**{¶25}** The Ohio Supreme Court has set forth the sufficiency of the evidence test as follows:

> **An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial and determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.**

*State v. Jenks*, 61 Ohio St.3d 259 (1991), at syllabus, superseded by state constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89 (1997); *See also Eastley v. Volkman*, 132 Ohio St. 3d 328, 2012-Ohio-2179, ¶ 10.

**{¶26}** The test for sufficiency of evidence has also been held applicable to determining a Crim.R. 29 motion for acquittal. "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material

element of a crime has been proved beyond a reasonable doubt. *State v. Bridgeman*, 55 Ohio St.2d 261, syllabus (1978). This court has previously found that the *Bridgeman* standard "must be viewed in light of the sufficiency of evidence test * * *." *State v. Kneply*, 3d Dist. No. 7-11-02, 2012-Ohio-406, ¶ 23, quoting *State v. Foster*, 3d Dist. No. 13-97-09, at *2 (Sept. 17, 1997).

{¶27} In this case, Fagan was indicted for robbery in violation of R.C. 2911.02(A)(3) which reads:

> **(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:**
>
> **\* \* \***
> **(3) Use or threaten the immediate use of force against another.**

Force is defined by R.C. 2901.01(A) as, "violence, compulsion, or constraint physically exerted by any means upon or against a person or a thing."

{¶28} At trial, the State first called William Gasuras, the owner of Little Athens and victim of the crime. Gasuras, 70 years old at the time of this incident, testified that he followed his normal routine closing down Little Athens and then walked out to his vehicle in the parking lot carrying a moneybag. (Tr. at 67). As Gasuras approached his vehicle someone came up "forcefully behind [him], yank[ed his] bag and started to run." (Tr. at 68). Gasuras testified that he "felt [White's] arm go through * * * [his] arm and [his] bag disappeared." (Tr. at 79).

11

Gasuras turned and saw two subjects running down the street and he chased them down an alley, yelling for them to stop. (Tr. at 68).

{¶29} Gasuras testified he got a good look at the robbers and that one was a little bit taller than Gasuras (Gasuras is 5'8") and the other was about five or six inches shorter than he was. (Tr. at 69). Gasuras also testified that he thought one of the robbers was a female or a younger child by the way the robber ran. (Tr. at 76).

{¶30} While pursuing the robbers, Gasuras testified that the subjects turned around as they crossed a street behind Fisher's Auto Parts and faced him in a lighted parking lot. (Tr. at 69-70). Gasuras testified he got a good look under the lighting from 10-12 feet away of the robbers he would later identify as Josh White and Lindsey Fagan.[2] (Tr. at 70). Gasuras testified he chased the two for about a block. (Tr. at 83). Gasuras testified that at that point White and Fagan split up and ran in different directions. (Tr. at 72).

{¶31} Gasuras testified he came across a pickup truck with two people in it that was coming down the alley. Gasuras told the people in the pickup truck he was robbed and that the pair responsible split-up. (Tr. at 76). The two in the truck told Gasuras they would chase after them, and they did. According to Gasuras, the

---

[2] Gasuras testified that White and Fagan had hung around the restaurant and eaten there before. (Tr. at 84). Although Gasuras recognized Fagan, having seen her around, he did not know her name. Gasuras testified that he did not learn her name until the day after the robbery when his granddaughter showed him Lindsey's picture. (Tr. at 74).

two in the truck went in the direction Gasuras indicated White had run. (Tr. at 77).

{¶32} Gasuras never caught up to either assailant that night. At trial Gasuras unequivocally identified Fagan as the second robber. (Tr. at 71). Gasuras testified that he was one-hundred percent certain Fagan was the second robber being that he got a good look at her under the light. (Tr. at 78).

{¶33} The State called Josh White as its second witness. White was serving a prison term for the robbery in this case and was offered a reduced sentence for his cooperation.[3] (Tr. at 93, 109). White testified he had known Lindsey for several years and that they had planned the robbery together roughly a month before it took place. (Tr. at 93-94). White testified he had been to the Little Athens restaurant several times before as he had at one time been dating a girl that worked there. (Tr. at 95).

{¶34} White's testimony mirrored Gasuras' in that White testified when Gasuras came out to his car carrying the moneybag, White forcefully grabbed the moneybag and then took off running. (Tr. at 95-96, 116). White testified that at some point he and Fagan split up when running; he could not recall why. (Tr. at

---

[3] According to the testimony, White was given a four-year prison sentence which would be reduced to two years in exchange for his cooperation. (Tr. at 109).

96). White testified that he and Fagan met up later at his brother's house and that he split the money in the bag evenly with Fagan.[4] (Tr. at 96-97).

{¶35} White testified that he went into hiding after the robbery because he did not want to go to jail. (Tr. at 110). Subsequently, after hiding out for some time, White's friend Ashley got into a fight with Fagan at school. (Tr. at 111). White testified that he called Fagan and yelled at her about this altercation. (Tr. at 111). At some point during the call Fagan's dad got on the phone. (Tr. at 111). According to White, it was a few weeks after this phone call that he was arrested. (Tr. at 112).

{¶36} White testified that when he was arrested, he implicated Fagan in the crime as the other robber. (Tr. at 113). White further testified that he implicated Fagan because he felt he "shouldn't take all the blame for it because it wasn't just [him]." (Tr. at 113).

{¶37} The State next called Dawn Gray. Dawn testified that she did not see White or Fagan the night of the robbery, but she testified that someone had been by her house approximately twenty minutes before the restaurant was robbed. (Tr. at 122). Dawn testified that approximately twenty minutes after the robbery, the

---

[4] White's testimony was that there was "like 400 -- $400 or something like that" in the bag. Gasuras claimed at the sentencing hearing that there was $892 in the bag and this was the amount awarded in restitution.

granddaughter of the owner of the restaurant came over to her house and informed her that the restaurant had been robbed. (Tr. at 122).

{¶38} The State next called Tiffany Gray, Dawn's daughter. Tiffany Gray testified that on the night of the robbery, close to the time of the incident, White and Fagan ran beside her house. (Tr. at 125). Tiffany testified that she was 100 percent certain it was White and Fagan running through her yard. (Tr. at 127). Tiffany testified that she thought it was after the restaurant was robbed that she saw the two running through the yard. (Tr. at 126).

{¶39} After Tiffany Gray testified, the State rested its case and Fagan made a Rule 29 motion for acquittal. The Court overruled this motion finding there was sufficient evidence to convict Fagan.

{¶40} Despite Fagan's claims that there was not enough evidence to find that "force" was used in this case, the testimony establishes that Gasuras, the 70-year-old elderly victim, had his moneybag forcefully yanked away from him. This type of "force" has been found sufficient in other cases, especially where the victim is elderly or young and particularly vulnerable on account of age. *See State v. Carter*, 29 Ohio App.3d 148 (9th Dist.1985) (force held sufficient to sustain robbery conviction under R.C. 2911.02(A)(3) where an elderly purse-snatching victim was found "especially vulnerable because of her age" and given that vulnerability, "the force applied, however minuscule, was within the

15

contemplation of the statute."); *See also In re Kinser*, 5th Dist. No. 1997CA00130, 1998 WL 172991, *2 (where force held sufficient when 17-year-old boy took cat from 6-year-old girl's arms "[b]ecause of [girl's] extremely young age, especially in comparison to appellant's age, she had a peculiar vulnerability[.]").

{¶41} Moreover, White, who was in prison for committing the robbery against Gasuras, specifically testified that he used "force" on Gasuras to acquire the moneybag and deprive Gasuras of its contents. Based upon these facts we find that the testimony presented by the State constitutes sufficient evidence for a jury to find that the element of "force" to prove Robbery as indicted was presented. In addition, we find that the evidence produced at trial was sufficient to prove the remaining elements of robbery. Therefore, as there was sufficient evidence to convict Fagan of the Robbery, it was not an error to deny Fagan's Rule 29 motions. Accordingly, Fagan's first and third assignments of error are overruled.

*Second Assignment of Error*

{¶42} In Fagan's second assignment of error, she argues that her conviction for Robbery was against the manifest weight of the evidence. Specifically Fagan contends that the State failed to prove beyond a reasonable doubt that Fagan participated in the robbery based upon the contradictory testimony of witnesses at trial.

**{¶43}** The Supreme Court of Ohio has "carefully distinguished the terms 'sufficiency' and 'weight' in criminal cases, declaring that 'manifest weight' and 'legal sufficiency' are 'both quantitatively and qualitatively' different. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 10, quoting *State v. Thompkins*, 78 Ohio St.3d 380 (1997), paragraph two of the syllabus.

**{¶44}** Unlike our review of the sufficiency of the evidence, an appellate court's function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. *Volkman*, *supra*, at ¶ 12; *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In reviewing whether the trial court's judgment was against the weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *Id*. In doing so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Andrews*, 3d Dist. No. 1-05-70, 2006-Ohio-3764, ¶ 30, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1983); *Thompkins*, 78 Ohio St.3d at 387.

**{¶45}** At trial, Fagan produced an alibi witness in the form of her father who stated that Fagan was at home both shortly before and shortly after the

17

alleged incident. Fagan also produced two witnesses from the incident who said Fagan was not one of the robbers. The two witnesses said the second robber was both taller than Fagan, and male.

{¶46} Contrary to the testimony produced by the defense, the State presented the testimony of Gasuras who said he was certain Fagan was the second robber having gotten a good look at her from 10-12 feet away under good lighting. Gasuras testified he had seen Fagan around though he did not know her name. In addition, the State presented the testimony of White who said he and Fagan had planned and executed the robbery. Finally, the State produced the testimony of Tiffany Gray who testified to seeing White and Fagan together in the area around the time of the robbery, contradicting Fagan's alibi.

{¶47} Notably Fagan's alibi witness was her father, who would be biased toward his daughter, and that alibi is further brought into doubt by the testimony of Tiffany Gray. Moreover, though Fagan produced witnesses who said she was not the second robber Gasuras stated affirmatively he was certain it was her. Although White's testimony may have been suspect as he was getting a deal to testify, Tiffany Gray's testimony corroborates White's testimony in that the two were placed together around the time of the robbery. Based upon these facts, we find that a jury could properly conclude that Fagan was the second robber. Accordingly, Fagan's second assignment of error is overruled.

{¶48} For the foregoing reasons, Fagan's assignments of error are overruled and the judgment of the Crawford County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, J., concurs in Judgment Only.**

**ROGERS, J., Dissenting.**

{¶49} I respectfully dissent from the majority's disposition of Fagan's first assignment of error because I would find that the State failed to present sufficient evidence to establish the element of force beyond a reasonable doubt.

{¶50} As the majority correctly notes, "force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A). The Committee Comment to R.C. 2911.02 provides, in relevant part, "that the difference between theft and robbery is an element of actual or potential harm to persons." In *State v. Furlow*, 80 Ohio App.3d 146 (2d Dist. 1992), the court noted that "[t]he definition of 'force' in R.C. 2901.01(A), without more, does not serve to sufficiently distinguish the offenses of theft and robbery, which carry very different penalties." Thus, the court reasoned, "[r]equiring that the force necessary to elevate a theft to a robbery involve actual or potential harm provides a meaningful distinction between the

19

two offenses." *Id.*; *See also State v. Weaver*, 2d Dist. No. 93 CA 02 (Nov. 1, 1993); *State v. Myatt*, 10th Dist. No. 96APA12-1657 (June 30, 1997). I find this reasoning persuasive.

{¶51} In *Furlow*, the defendant was convicted of robbery after he stole five one dollar bills and a wallet from the victim's hands. The defendant asked the victim whether he had change for a five dollar bill. In response, the victim pulled his wallet out and removed five one dollar bills from his wallet, holding the wallet and money in different hands. The defendant took the victim's wallet and money from his hands and fled. At trial, the victim described the incident as follows:

> * * * I had the billfold in my left hand, five ones in my right. And he came toward me and I said, well? I looked up at him and I said where's your five? And just like that-I was looking at him. He grabbed the billfold out of one hand, five ones, turned and took off.
>
> * * *
>
> The minute I saw his hand out there and nothing in it it started dawning on me. But it was too late. I knew right then-I put a little grip on it so he had to snatch hard. *Furlow* at 149.

At most, the court reasoned, the victim's testimony established that the victim "was gripping * * * his hands more tightly than he normally would have." *Id*. Based on this testimony, the court determined that the defendant's taking of the victim's money and wallet did not fall within the ambit of the word violent, or occasioned either actual or potential harm to the victim. Accordingly, the court

determined that there was insufficient evidence to establish the element of force beyond a reasonable doubt, and remanded the matter for sentencing on the lesser included offense of theft.

{¶52} In *Weaver*, the defendant was convicted of robbery, among other offenses, for stealing the victim's purse from her person. While the victim waited to enter a parked car, the defendant ran up from behind her and took her purse. At trial, the victim described the incident as follows:

> We came out of the Douglas Inn and we were parked across the street by the Moose Club, and we were walking over to the car; and as I was waiting for him to unlock the door for me, I had my purse on my shoulder and my hand on my shoulder strap, and someone grabbed my purse from behind, had come up running and grabbed it, took off and went down Miami Street.
>
> * * *
>
> Q. And when the purse was taken from you, were you actually wearing it at that time?
>
> A. Yes, I had it up on my shoulder with my hand on this strap (indicating), but not on-on the purse itself.
>
> * * *
>
> Q. And was it ripped away from you?
>
> A. Yes. *Weaver*, 2d Dist. No. 93 CA 02 at *2-3.

Based on this testimony, the court determined that the evidence did not establish that the victim "suffered actual physical harm or its potential from the Defendant's

21

acts." *Id*. at *3. Accordingly, the court determined that there was insufficient evidence to establish the element of force beyond a reasonable doubt, and remanded the matter for sentencing on the lesser included offense of theft.

{¶53} Similarly, in *Myatt*, the court, considering *Furlow* and *Weaver*, found that there was insufficient evidence to establish the element of force where the evidence simply demonstrated that the thief "yanked" the victim's purse from her person. *Myatt*, 10th Dist. No. 96APA12-1657, at *4.

{¶54} I find that the facts of the present case to be similar to those in *Furlow*, *Weaver*, and *Myatt*. Here, Gasuras described the incident as follows:

> That particular evening, I'd done my routine and I was getting ready to leave. Uhm, I opened the back door and I proceeded to my car that was parked behind the store. Once, as I got to the car, I was carrying my, uhm, money bag and newspaper in my hand, my right hand, as I approached my car, I pushed the remote, then I switched my newspaper and my money bag to my left hand to open the door. At that particular time, I felt someone forcefully behind me, yank my bag and started to run. Trial Tr., p. 67-68.

Based on Gasuras' description, I fail to see the difference between the force used to take the moneybag from his hands and the force used to take the money in *Furlow* and the purses in *Weaver* and *Myatt*. Similar to the defendants in those cases, White simply "yank[ed]" the moneybag from Gasuras' hands. There is no evidence that this "yank" could be considered violent, as provided for in R.C. 2901.01(A), caused actual harm, or had the potential of causing harm to Gasuras.

{¶55} In finding sufficient evidence of force, the majority appears to rely on Gasuras' age (70 years old), suggesting that it caused him to be more vulnerable to harm. However, there is nothing in the record which suggests that Gasuras was vulnerable simply because he was 70 years old. If anything, Gasuras' action of chasing White and Fagan demonstrates that he was not as vulnerable as the majority suggests. Thus, I find the majority's reliance on Gasuras' age and perceived vulnerability unavailing.

{¶56} For the reasons stated above, I would find that the State failed to present sufficient evidence to establish the element of force, and, therefore, would sustain Fagan's first assignment of error and find Fagan's second and third assignments of error moot. *See* App.R. 12(A)(1)(c). I concur in judgment only as to Fagan's fourth assignment of error.

**/hlo**

23